███████████

# In the United States Court of Federal Claims
### Bid Protest

| | |
|---|---|
| MCI DIAGNOSTIC CENTER, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 24-1577C<br><br>Judge Armando O. Bonilla |

## SECOND AMENDED COMPLAINT

1.     In accordance with Rule 15(a) of the Court's Rules, MCI Diagnostic Center, LLC ("MCI") challenges the decision of the U.S. Department of Veterans Affairs (the "VA" or the "Agency") to issue and award at least five solicitations for reference laboratory services in violation of the VA Rule of Two. Each of these solicitations is required to be set aside for Service Disabled Veteran Owned Small Businesses ("SDVOSBs") because there are at least two such entities that are capable and qualified to perform the reference laboratory services the VA procures.

2.     In particular, there are at least four solicitations that the Agency has improperly issued as sole source awards to other than SDVOSBs. These are Solicitation 36C24124Q0733 ("VISN[1] 1 Solicitation 0733[2]), Solicitation 36C25624Q1470 ("VISN 16 Solicitation 1470"), Solicitation 36C25925F0001 ("VISN 19 Solicitation 0001"), and Solicitation

---

[1] The VA administratively divides the U.S. into geographical regions called the Veterans Integrated Services Networks ("VISNs").
[2] Last four digits of each solicitation's identification number.

1

███████████████

36C26025P0022 ("VISN 20 Solicitation 0022"). These solicitations have been improperly procured on a sole source basis. To avoid using qualified and capable SDVOSBs, the Agency has improperly bundled its requirements and unduly restricted the procurement criteria. These sole source solicitations are also the result of the Agency's failure to adequately plan. Because these solicitations have not been issued to SDVOSBs, they violate the VA Rule of Two. Each of these sole source awards, like the scores that have preceded them over the last six years, is improper and the VA must be required to set aside these awards and follow the VA Rule of Two.

3. The VA has also violated the VA Rule of two by using tiered evaluation schemes which improperly result in awards of reference laboratory service contracts to other than SDVOSBs. In VISN 4, the Agency has currently issued solicitation No. 36C24424R0004 ("VISN 4 Solicitation 0004"), which uses a tiered evaluation scheme. The tiered evaluation scheme is simply a guise for the Agency's continued efforts to avoid setting aside these procurements. This is a violation of applicable VA statutes and regulations, including the VA Rule of Two.

## I. INTRODUCTION

4. The Veterans Benefits Act of 2006 ("VBA") compels the VA to award all contracts to SDVOSBs or veteran-owned small businesses ("VOSB") whenever the Contracting Officer can reasonably expect that at least two of these veteran-owned small businesses will submit offers and that "award can be made at a fair and reasonable price that offers best value to the United States." 38 U.S.C. § 8127(d) (the "VA Rule of Two").

5. In 2016, the Supreme Court considered whether the VBA requires VA to apply the "Rule of Two in all contracting, or whether the statute gives the Department some discretion in applying the rule." *Kingdomware Techs. Inc. v. United States*, 579 U.S. 162 (2016) (Thomas, J.) (per curiam). The Court unanimously held that the Rule of Two "is ***mandatory***, not

discretionary. Its text requires [the VA] to apply the Rule of Two to **_all_** contracting determinations to award contracts to veteran-owned small businesses." *Id*. at 171 (emphases added). The *Kingdomware* court expressly held that this included Federal Supply Schedule procurements. *Id*. at 175.

6. Despite the unambiguous statutory interpretation by the Supreme Court as a binding obligation in all contracting determinations, the VA repeatedly and systematically refuses to obey this law in its procurements for reference laboratory testing services. Since 2018, MCI has actively engaged with the VA and participated in almost every known VA procurement for reference laboratory testing services. In some instances, the VA has properly set aside its procurements, only to later cancel those solicitations and issue improper sole source awards or unrestricted solicitations. At times, the VA has actively encouraged contracting officers and the SBA to exclude MCI from competitions and the Agency has directly advised MCI not to participate in procurements. Over the course of many meetings, conversations, and protests, the VA has been made aware of MCI's concerns and capabilities. Yet, time and time again, the VA seeks ways to avoid setting-aside solicitations for SDVOSBs or awarding contracts to MCI, in violation of the law.

7. There are currently at least five active solicitations for reference laboratory testing services that the VA has failed to set aside despite the availability and expressed interest of at least two qualified and capable SDVOSBs. There have been and will continue to be solicitations for reference laboratory testing services for VA facilities across the country. MCI requests that this Court direct the VA to reasonably apply the VA Rule of Two analysis and set aside all pending procurements for laboratory testing services in accordance with its statutory obligations. In particular VA must set aside the sole source procurements under VISN 1

Solicitation 0733, VISN 16 Solicitation 1470, VISN 19 Solicitation 0001, and VISN 20 Solicitation 0022, as well as the VISN 4 Solicitation 0004 which improperly uses a tiered evaluation scheme.

## II.    PARTIES

8.    Plaintiff is MCI, an SDVOSB verified by the Center for Verification and Evaluation in 2017. MCI is the nation's largest SDVOSB laboratory testing service provider and holds national accreditation from the College of American Pathologists and certification from the Clinical Laboratory Improvement Accreditation and provides comprehensive laboratory testing services across federal, state, and local government sectors. MCI also holds Federal Supply Schedule Contract No. 36F79723D0014. MCI can and has provided its laboratory services to the VA.

9.    Defendant is the United States of America, acting by and through the VA.

## III.    JURISDICTION

10.    The Tucker Act provides that the Court of Federal Claims:

> shall have jurisdiction to render judgment on **an action by an interested party objecting to a solicitation** by a Federal agency for bids or proposals for a proposed contract . . . **or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement**.

28 U.S.C. § 1491(b)(1) (emphasis added). VA's violation of the VBA (namely, its failure to conduct a reasonable Rule of Two analysis), is a "violation of statute . . . in connection with a procurement or a proposed procurement" because it is undisputed that "VBA is a statute that relates to all VA procurements." *PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1356 (Fed. Cir. 2018) ("Far from being 'tangentially related to a government procurement,' the VBA

dictates the methodology the VA must employ for its procurements."). As a result, the Court of Federal Claims has jurisdiction over MCI's claims.

11.     The Tucker Act does not define "interested party," but the Federal Circuit has construed the term "in accordance with the definition provided in the Competition in Contracting Act[.]" *Am. Federation of Gov't Employees, Local 1482 v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). Under CICA, an interested party is an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2).

12.     MCI is a qualified SDVOSB that provides laboratory testing and consultation services to the VA. For example, MCI currently provides cannabis testing services to VISN 6, anatomical pathology consultant services to VISN 22, and Reference Laboratory Testing in VISN 17. Declaration of Colleen Payne ("Payne Decl.") at ¶ 3. But for VA's violation of procurement law and regulations, MCI's services would be competitive for most if not all VA requirements for laboratory testing services.

13.     MCI has participated in many procurements for laboratory testing services, including procurements at issue in this Complaint. MCI tracks and responds to all published VA market research and procurement opportunities for laboratory testing services. Payne Decl. at ¶ 4. In 2023 alone, MCI responded to 36 sources sought notices and submitted 6 proposals for laboratory testing services for VA. *Id*. It has continued responding to sources sought notices and submitted proposals throughout 2024. *Id*. As such, MCI is an actual or prospective SDVOSB bidder on pending VA procurements whose direct economic interest is affected by the VA's contract awards (or the VA's failure to award contracts). *See PDS Consultants*, 907 F.3d at 1356

(finding SDVOSB had standing to challenge the VA's failure to conduct a procurement in accordance with the VA's statutory Rule of Two).

14. MCI had a substantial chance of award for the sole-sourced VISN 1 Solicitation 0733, VISN 16 Solicitation 1470, VISN 19 Solicitation 0001, and VISN 20 Solicitation 0022, and the VISN 4 Solicitation 0004 (using a tiered evaluation scheme) because it is a qualified SDVOSB providing laboratory testing services to VA and other agencies who would compete for and perform additional VA contracts for laboratory testing services.

## IV. BACKGROUND

15. MCI, an SDVOSB, is a laboratory testing service provider that serves the VA. Payne Decl. at ¶ 1. The founder is the surviving spouse of a service-disabled veteran. Payne Decl. at ¶ 19. The company provides timely and accurate testing, including to veterans reliant on VA healthcare. MCI's laboratory testing services are currently used in VISNs 6, 17, and 22, as well as other federal agencies, including the Department of Defense and the Department of Labor. Payne Decl. at ¶¶ 1, 3.

16. There are currently at least three large businesses that are providers of laboratory testing services to the VA: Laboratory Corporation of America ("Lab Corp."); Quest Diagnostics of Pennsylvania Inc. ("Quest"); and ARUP Laboratories ("ARUP"). Ex. 1, Ex. 2, Ex. 3.

17. There are over 100 SDVOSBs under the North American Industry Classification System ("NAICS") 621511. There are at least three main SDVOSB providers of laboratory testing services to VA: Central Tox LLC ("Central Tox"); Neo Services, LLC ("Neo Services"); and MCI. Ex. 4; Ex. 5; Ex. 6. Like MCI, Central Tox also holds a Federal Supply Schedule contract. Ex. 7.

18.     Central Tox is an SDVOSB, and a supplier of medical laboratories and other testing services. Ex. 4. Central Tox was awarded Contract No. 36C24222D0030 for laboratory testing services in VISN 2.

19.     Neo Services is an SDVOSB, and a supplier of medical laboratories and other testing services. Ex. 5. Neo Services was awarded Contract No. 36F79724D0148 under its Federal Supply Schedule.

20.     VA has awarded contracts to at least three different capable and qualified SDVOSBs under NAICS 621511 for laboratory testing services.

**A. The VA's History of Improperly Procuring Reference Laboratory Services**

21.     The United States is geographically divided into twenty-three regions of Veterans Integrated Service Networks ("VISN"), which are overseen by the VA. The VISNs operate as regional systems to address local healthcare needs and increase access to care.[3]

22.     Each VISN may procure laboratory testing services for its entire region, or individual health centers may procure laboratory testing services capabilities to meet the health center's specific needs.

23.     Since 2018, MCI has protested at least 55 attempts by the VA to make improper sole-source awards to large businesses or its failure to set aside contracts for veteran-owned small businesses as required by its Rule of Two. At least 53 of these protests resulted in the Agency taking corrective action to conduct additional market research and/or resolicit the requirements. Payne Decl. at ¶ 9.

---

[3] Department of Veterans Affairs, Veterans Health Administration, "Veterans Integrated Services Networks," https://www.va.gov/HEALTH/visns.asp (last accessed January 23, 2023).

24. As a result of these protests, the VA is fully aware that it can purchase the products of SDVOSBs to meet its laboratory testing service needs. In many cases, these protests have convinced VA that it must conduct additional market research or cancel its attempts to sole-source its requirements to large businesses. Additionally, the VA has set aside at least two procurements this year for SDVOSBs, admitting that there are at least two qualified and capable SDVOSBs that can perform this work. Ex. 8, Ex. 9.

25. Currently, there are at least five pending procurements for reference laboratory services issued by the VA, which the VA has improperly failed to set aside for SDVOSBs.

| VISN | Solicitation No. | Procurement Type | Federal Supply Schedule |
|------|------------------|------------------|-------------------------|
| VISN 1 | 36C24124Q0733 | Sole Source | No |
| VISN 4 | 36C24424R0004 | Tiered Evaluation | No |
| VISN 16 | 36C25624Q1470 | Sole Source | Yes |
| VISN 19 | 36C25925F0001 | Sole Source | Yes |
| VISN 20 | 36C26025P0022 | Sole Source | Yes |

**B. VA's Illegal Sole Source Solicitations for Reference Laboratory Services**

*i.* *VA's Illegal Sole Source Solicitation for VISN 1 Laboratory Testing Services*

26. The VA issued a solicitation notice under Notice ID No. 36C24124Q0733 for reference laboratory testing services for the New England Healthcare System for a total contract value of $3,857,142.87. Ex. 10.

27.     On September 17, 2024, the VA published "Sole Source Justification Under Simplified Procedures for Certain Commercial Items in Accordance with FAR 13.5" (the VISN 1 J&A) Ex. 17. A J&A was prepared in accordance with FAR 6.303-2 based upon the assertion that "Only One Responsible Source and No Other Supplies or Services Will Satisfy Agency Requirements. *Id.*

28.     The VISN 1 J&A stated that this procurement involves a "massive testing menu" and "[m]any tests require complex very expensive instrumentation." The J&A admitted that "[t]here are many tests that are very low volume." *Id.* at 2.

29.     The VISN 1 J&A provided the following rationale for the sole source contract: "Soliciting multiple offers for an interim contract is not feasible due to the requirement of a short turnaround time. This interim contract must be in place and fully implemented by 10/1/2024." *Id.* "The interim contract will allow for proper time to develop the RFQ, solicitation and award." *Id.* at 5. Specifically:

> The current Quest contract order of the Federal Supply Schedule V797D-70090 / 36C234124F0073 is set to expire 9/30/2024. There is **not enough time** to get a new contract in place and no other vender would be able to transition to such complex services in this short amount of time.

*Id.* at 2 (emphasis added).

30.     According to the VISN 1 J&A, during the Agency's Market Research the CO identified at least two large businesses (Quest and Lab Corp) and two SDVOSBs that were available to perform the requirements. *Id.* at 3. While recognizing that FAR 52.219-4(e)(1) and VA 825.219-75 require set-asides for small businesses, the VISN 1 J&A reasoned that "it is not plausible that a small business can meet the '50%' in-house rule. Based on the market research

conducted, it was the CO's determination that the U.S.C. 8127 cannot be met and a SDVOSB set-aside is not in the best interest of the agency." *Id.* at 4.

31.     The October 3, 2024 Notice announced that Quest was awarded the contract on October 1, 2024.

### ii.     *VA's Illegal Sole Source Solicitation for VISN 16 Laboratory Testing Services*

32.     On October 11, 2024, the VA published a sole-source solicitation notice under Notice ID. 36C25624Q1470 for the South Central VA Health Care Network in VISN 16. Ex. 18 at 1. This contract award was a short-term, fixed price Blanket Purchase Agreement ("BPA") to the incumbent contractor LabCorp for the base period of October 1, 2024, through December 31, 2024. *Id.*

33.     The contract was awarded on October 1, 2024, ten days before the posting of the redacted sole-source notice on October 11, 2024. *Id.* The VA cited FAR 8.405-6(b)(3) to justify the award to the incumbent and reasoned that only one sole source is capable of providing the services required because the services are "unique or highly specialized. *Id.* at 1–2 (citing FAR 8.405-6(a)(1)(B)).

34.     The VISN 16 J&A further characterized this sole-source as a "short-term bridge BPA" "while a long-term competitive solicitation is being pursued" and justified the award to the incumbent on the basis that "[other] laboratories for the required test menu [] would not be readily available for use [on] October 1, 2024." *Id.* at 4. But "LabCorp is currently providing all the required testing, analysis, and related services." *Id.* at 5.

35.     During market research, the VA identified 25 SDVOSBs and VOSBs offering reference laboratory testing services but dismissed them as "similar but not the exact requirement." *Id.* at 5. VA further found seven reference laboratory small businesses but

10

concluded "none can provide the immediate services that are required to not disrupt the essential services needed for the veterans. The VA and SBA Rules of Two could not be supported or met." *Id.*

36. Concerning MCI, the VA stated: "MCI Diagnostic Center, LLC description states that they provide Reference Lab Services however not all required SINs[4] and services are provided. FSS Contract posted on the GSA elibrary contains 204 tests/panels. The V16[5] required test menu contains over 2000 different tests with total annual estimated test volume of over 190,000 tests. MCI does not have a VA approved MOU/ISA for required LEDI connectivity nor is LEDI[6] established or operational at a [redacted] participating V16 Lab. They cannot meet the requirement and based on the vendors descriptions they will not be able to provide services on 10/1/2024." *Id.* at 6.

37. Similarly, VA excluded Central Tox, NEO, and other small businesses on the basis that they held no FSS contract, had no VA approved MOU/ISA for connectivity, were not LEDI connected, or otherwise offered insufficient testing. *See id.* 5–7.

38. This solicitation was preceded by two sources sought notices ("SSNs"); first on September 19, 2023, and second in March 2024. *Id.* at 7. Three small businesses, Central Tox, MCI, and NEO, and two large businesses, LabCorp and Quest, responded. *Id.*

---

[4] SIN stands for Special Item Number, which under a GSA Schedule contract categorizes the items being ordered by the agency, in this case, the laboratory testing services required by the VA.

[5] VISN 16.

[6] LEDI stands for Laboratory Electronic Data Interchange, a system that allows VA facilities and laboratories to exchange data electronically.

39.     MCI provided a capabilities statement in response to the first sources sought notice. *Id*. at 8.

### iii.     *VA's Illegal Sole Source Solicitation for VISN 19 Laboratory Testing Services*

40.     On October 7, 2024, the VA published a sole-source solicitation notice under Solicitation No. 36C25925F0001 for several VA hospitals in Montana, Wyoming, Colorado, Oklahoma, and Utah. Ex. 20 at 1. On October 1, 2024, the VA awarded a contract to LabCorp for the performance period of October 1, 2024 through March 31, 2025, in the estimated value of $2,766,000.00. *Id*. at 2.

41.     In the sole-source justification ("VISN 19 J&A"), the VA stated that "[o]nly one source is capable of providing the supplies or services required at the level of quality required because the supplies or services are unique or highly specialized." *Id*. (citing FAR 8.405-6(a)(1)(B)).

42.     VISN 19 J&A further stated that LabCorp is unique because (1) "they have a currently established working electronic interface system with all eight (8) VISN 19 locations," (2) "they have the most comprehensive test menu . . . of over 6,000 tests" and (3) "they have the capability to meet the required turnaround times (TATs) for VISN 19's large reference lab volume of 7,000 – 8,000 tests per month across all laboratory disciplines (i.e. hematology, microbiology, clinical chemistry, serology, toxicology, etc.)." *Id.*

43.     The VA found sole-sourcing to LabCorp to provide best value for the government because LabCorp's listed prices in FSS are "fair and reasonable" and "same pricing as the current FSS-BPA (36C25922A0002) pricing." *Id*. at 3.

44.     The market research on the VISN 19 J&A showed that that VA identified three SDVOSBs—Central Tox, MCI, and NEO—and several other small businesses that were

12

available to perform the requirement. *Id.* at 4. But the VA found that none of them were capable of fulfilling its needs for four reasons: (1) "VISN 19 test volumes are beyond their capabilities"; (2) "they are unable to meet the limitations of subcontracting"; (3) "they do not have an approved interface with VistA"; (4) "they are unable to meet acceptable turnaround times; and (5) "they lack a dedicated courier system." *Id.* The VA ruled out other big companies like ARUP and Quest on the basis that they do not offer all required testing, have adequate TATs, or have the workforce to perform 7,000–8,000 tests per month. *Id.*

45.     According to the J&A, VISN 19 used three BPAs to fill reference laboratory testing needs, each awarded to ARUP, Quest, and LabCorp. *Id.*

### iv.     VA's Illegal Sole Source Solicitation for VISN 20 Laboratory Testing Services

46.     On October 3, 2024, the VA published a sole-source solicitation notice under Notice ID No. 36C26025P0022 for the Portland VA Medical Center in VISN 20. Ex. 11. This contract was for a five-month order for reference laboratory testing with performance period from October 1, 2024 through February 28, 2025.

47.     The contract was awarded on October 1, 2024, to Oregon Health & Science University (OSHU). *Id.*

48.     The VA posted its sole source justification on the basis that there was only one responsible source to meet the Agency's needs (the "VISN 20 J&A") on October 3, 2024. Ex. 12.

49.     According to the Justification, "the incumbent contractor, OSHU has already met the requirements of LG 0084 – Laboratory TAT Policy, ensuring that they are able to immediately provide services, without the Veteran's Health Administration experiencing unacceptable delays in fulfilling its requirements." *Id.* "OSHU is the academic affiliate of

VAPHCS. The providers and clinical teams recommending and providing care often have joint appointments. Patient care may occur at both facilities. Thus, it is essential to the continuity of care and case integrity that services continue to be provided by OSHU." *Id.*

50.     The J&A further stated that certain tests are uniquely suited for OHSU because it is connected with the VA via a sky bridge and a pneumatic tube system, enabling fast processing of samples within 1 hour of collection. *Id.* at 2.

51.     The VISN 20 J&A represented that "[r]esponses were reviewed from potential vendors as part of the market research." *Id.* "Three (3) responses and capability statements were received from SDVOSB vendors" including Central Tox, NEO Services, and MCI. *Id.* VISN 20 J&A concluded that "[e]ach of these vendor's testing facility is not located in Oregon and are therefore incapable of meeting the one-hour turnaround time required. Logistical issues limit the ability to transport specimens across state lines within the required time to ensure the specimen is delivered, received, tested, and the results are received in one hour." *Id.*

        *v.     VA's Proper Sole Source Solicitation for VISN 10 Laboratory Testing Services (Not Under Protest)*

52.     The VA awarded a sole-source laboratory testing services contract to Marion General Hospital on September 30, 2024, under Contract No. 36C25024C0196. ("VISN 10 Procurement 0196"). Ex. 21. The value of the contract was $49,350.00 for a base plus four option years. The VA justified the sole source contract on the basis that the particular tests being ordered required a one-hour turn-around time. These time-sensitive tests could only be performed at Marion General Hospital, which is twelve minutes away by car, and is the maximum distance the specimens can afford to travel before testing must commence. *Id.* Notably, the sole source

14

contract award is limited to such time-sensitive testing, which is a very small number of tests and a very minimal value.

### C. VA's Illegal Tiered Evaluation in VISN 4 Laboratory Testing Services

53.     On January 10, 2024, the VA issued Solicitation No. 36C24424R0004 for VISN 4 reference laboratory testing services ("VISN 4 Solicitation" or "VISN 4 Procurement"). Ex. 13. VISN 4 Solicitation was amended several times, and the latest amendment issued on September 24, 2024 extended the deadline to submit proposals to October 9, 2024 at 10:00 AM EDT. Ex. 14.

54.     The VISN 4 Solicitation states that it is an 100% set-aside for SDVOSBs. Ex. 13 at 1 (original solicitation). However, the solicitation is actually conducted using a tiered evaluation process with the following tiers: (1) SDVOSBs; (2) VOSBs; (3) HUBZone small businesses and 8(a) small businesses; (4) all other small businesses with woman-owned small businesses having priority; and (5) **large businesses**." *Id*. at 1, 350-51 (emphasis added).

55.     Tiered evaluation is a type of procurement in which a contracting officer solicits proposals from multiple types of businesses, each referred to as a "tier," and evaluates proposals on a tier-by-tier basis in a set order of priority, treating each tier as a separate "set-aside" procurement.

56.     This tiered evaluation format is explained in Procurement Policy Memorandum 2018-03 (the "PPM"), which "provides guidance, standardize procedures, and required solicitation provisions when employing tiered evaluations for single or multiple-award solicitations." Ex. 15. The PPM contemplated tiered evaluations between SDVOSBs and VOSBs, all small businesses, and other than small entities.

57. The solicitation states that if an award cannot be made among the proposals in a higher priority tier, then the contracting officer withdraws the set-aside and "cascades" down to the next, lower priority tier, evaluating proposals from businesses in that tier. As the VISN 4 solicitation explains, "[a]t no time will the next tier be considered until the higher tier is withdrawn and all prospective offerors have been notified in writing that their offer is no longer being considered for award." Ex. 13 at 350.

58. If an award cannot be made at any tier, the contracting officer cancels the solicitation and reconsiders the acquisition plan for the procurement.

59. The VA's VISN 4 tiers place SDVOSBs at the first tier, VOSBs at the second tier, HUBZone small businesses and 8(a) small businesses at the third tier, all other small businesses with women-owned small businesses having priority at the fourth tier, and large businesses at the fifth tier. *Id.* at 350–351. VISN 4 Solicitation states: "This procurement is set-aside based on an order of priority as established in 38 U.S.C. 8127." *Id.* at 350.

**D. The VA's actions in each of these procurements demonstrates VA's intent to deprive MCI and other SDVOSBs of the opportunity to compete fairly for these contracts and deprive them of their legal competitive privileges.**

60. MCI has voiced its concerns with the VA's improper procurement processes over the course of dozens of protests, meetings, and letters to VA procurement personnel. In 2019, after extensive efforts to inform the VA about its Rule of Two obligations, MCI participated in a meeting in the VA Dallas office with Mark Layman, Director of VISN 17. During this meeting, MCI was informed of the VA Director's belief that the VA Branch Chief in San Antonio was taking bribes. As a result, the VA encouraged MCI to continue protesting these improper actions while the VA explored their options. Payne Decl. at ¶ 12.

61.     Since 2018, MCI has competed for and was awarded multiple VA contracts, only to have those contracts improperly cancelled or the contract awards withdrawn. In some cases, MCI successfully completed Certificate of Competency investigations with the Small Business Administration only to have the VA cancel the contracts, at great expense to MCI. Ex. 16; Payne Decl. ¶ 6.

62.     MCI's current owner is the surviving spouse of a disabled veteran whose life could have been saved with a $6 test that MCI performs. Payne Decl. at ¶ 19.

63.     MCI has continued to make overtures to VA in an effort to inform them about the availability of SDVOSB providers of laboratory testing services. Payne Decl. at ¶ 9, 10, 12. As a result of these efforts at least 14 VA officials are aware that the VA should be setting aside its procurements for laboratory testing services for competition among SDVOSBs. *Id*. at 18. Most relevant here, these VA officials include:

> a.  Alan J. Swygert, Director, Veterans Health Administration, Vendor Relations, US Department of Veterans Affairs, 811 Vermont Avenue NW, Suite 6-188, Washington, DC 20240, (202) 632-7859;
>
> b.  Curtis Jordan, Executive Director, Regional Procurement Office West Veterans Health Administration ("VHA"), 6162 South Willow Drive, Suite 300, Greenwood Village, CO 80111-5152, (303) 712-5701, Curtis.Jordan2@va.gov; and
>
> c.  Angela Billups, Ph.D., Executive Director, Agency Protest Director, Office of Acquisition and Logistics at The Department of Veterans Affairs.

17

64.     VA's failure to set aside procurements and to deprive MCI of its lawfully awarded contracts cannot be explained except as the product of bias against MCI.

## V.     CAUSES OF ACTION

### COUNT I

**The VISN 1 Sole Source Procurement Under Solicitation 0733 is Arbitrary, Capricious, and an Abuse of Discretion because the Agency (1) Failed to Conduct Adequate Advance Planning, (2) Unnecessarily and Unjustifiably Bundled the Contract Requirements, (3) Unduly Restricted Competition, and (4) Violated the Competition in Contracting Act and VA Rule of Two.**

65.     MCI realleges and reincorporates by reference the allegations of Paragraphs 1–64, as if stated fully herein.

66.     The J&A issued by the Agency is irrational, arbitrary, and capricious and does not support the Agency's sole source award because it is the result of the Agency's failure to plan, improper bundling and undue restriction of requirements, and violates the VA Rule of Two.

*Failure to Conduct Adequate Planning*

67.     Agencies are required to conduct procurements using full and open competition unless an exception applies. 41 U.S.C. § 3301(a). "In no case may the head of an agency . . . enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advance planning." 41 U.S.C. § 3304(e)(5)(A)(i).

68.     The VA's decision to procure services via VISN 1 sole source contract was contrary to law and regulation because many companies, including at least two SDVOSBs, were capable of delivering needed testing services and the agency's urgent need for the services is based entirely on its own failure to plan.

18

69.     The Agency's "immediate need" for reference laboratory services is the result of its own lack of advance planning. The Agency has already issued one bridge contract to OHSU, and its continued delay in conducting an acquisition is the sole reason why it is in need of another illegal sole-source award. This lack of advance planning does not justify the VISN 16 sole source contract.

*Improper Bundling of Contract Requirements*

70.     The VA may not bundle together two or more small contracts to form a solicitation that is likely to be unsuitable for award to a small business. 15 U.S.C. § 631(j) (requiring federal agencies "to the maximum extent practicable" to structure contract requirements to facilitate competition by and among small business concerns and avoid "unnecessary and unjustified bundling of contract requirements"). The VA's bundling in VISN 1 was unnecessary and unjustified.

71.     In VISN 1 Procurement 0733, by bundling together a "massive testing menu" that includes "tests that are very low volume," the VA preemptively designed the solicitation to be unduly restrictive of competition and to hinder rather than facilitate competition by small business concerns.

72.     Bundling an excessive number of very low volume tests in VISN 1 Procurement 0733 lacked a rational basis, and the VISN 1 J&A failed to justify the "massive testing menu" bundling rather than procuring its core reference laboratory testing requirements from qualified SDVOSBs.

73.     Upon information and belief, VISN 1 Procurement 0733 requirements were previously procured under separate contracts and in other VISNs low volume or specialized tests are unbundled into separate contracts enhancing opportunities for small business.

74.     The VA knows how to unbundle and procure based on actual need as it did in VISN 10 Procurement 0196, where a nearby hospital was contracted to handle specialized time-sensitive tests for $49,350 for a base plus four option years.

75.     Had rare low volume or specialized tests been unbundled and procured separately, MCI and other SDVOSBs or VOSBs would have had a substantial chance of winning an unbundled solicitation.

*Unduly Restrictive Solicitation*

76.     The VA failed to "specify its needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement." 41 U.S.C. § 3306(a)(1)(A). The VA failed to "foster the participation of small business concerns" and "structure its contracting requirements to facilitate competition by and among small business concerns, taking all reasonable steps to eliminate obstacles to their participation." 41 U.S.C. § 631(j)(1), (2).

77.     The VA's restriction of competition including by excluding small businesses in VISN 1 Solicitation 0733 was unjustified and irrational because it was a result of the VA's failure to conduct proper advance planning, use of improper bundling, failure to follow the Rule of Two, bias against MCI, and preferential treatment of the incumbent.

78.     The VA's restriction does not serve a legitimate purpose and the government may meet its minimum requirements equally if not more efficiently and cost-effectively, by unbundling the tests, setting aside procurements for small businesses, or at a minimum conducting a competition among qualified offerors, including MCI.

*Violation of the Competition in Contracting Act and VA Rule of Two*

79.     The Agency sole-sourced this contract on the basis of only one responsible source. This is directly contradicted by the Agency's own market research which found there were at least two large businesses and two SDVOSBs that would compete to provide the solicited services.

80.     Because there were at least two SDVOSBs willing and capable of performing the work, this contract should have been set aside for SDVOSBs according to the VA Rule of Two because the VA is *mandated* to set aside procurements for SDVOSBs when "the contracting officer has a reasonable expectation that two or more [VOSBs or SDVOSBs] will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States." *See* 38 U.S.C. § 8127(d)(1); *Kingdomware*, 597 U.S. 162. The VA's failure to set aside the contract was thus a violation of the VA Rule of Two.

81.     The VA's failure to set aside VISN 16 procurement and decision to sole-source the procurement was the result of impermissible advance planning, improper bundling, and unduly restrictive solicitation criteria and constitutes a violation of the Competition in Contracting Act and VA Rule of Two. This Court must require the VA to resolicit VISN 16 procurement as an SDVOSB set aside.

## COUNT II

**The VISN 16 Sole Source Procurement Under Solicitation 1470 is Arbitrary, Capricious, and an Abuse of Discretion Because the Agency (1) Failed to Conduct Adequate Advance Planning, (2) Unnecessarily and Unjustifiably Bundled the Contract Requirements, (3) Unduly Restricted Competition, and (4) Violated the Competition in Contracting Act and VA Rule of Two**

82.     MCI realleges and reincorporates by reference the allegations of Paragraphs 1–64, as if stated fully herein.

*Failure to Conduct Adequate Planning*

83.     Agencies are required to conduct procurements using full and open competition unless an exception applies. 41 U.S.C. § 3301(a). "In no case may the head of an agency . . . enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advance planning." 41 U.S.C. § 3304(e)(5)(A)(i).

84.     The VA's decision to procure services via sole source procurement was contrary to law and regulation because many companies, including at least three SDVOSBs, were capable of delivering needed testing services and the agency's urgent need for the services is based entirely on its own failure to plan.

85.     The Agency's "immediate need" for reference laboratory services is the result of its own lack of advance planning. The Agency has already issued two sources sought notices since 2023, and its continued delay in conducting an acquisition is why it is in need of another illegal sole-source award. This lack of advance planning does not justify the decision to sole-source VISN 16 Procurement 1470.

86.     As the VA had multiple years to prepare for an open competition, this award of yet another "short-term" contract is unjustified.

*Improper Bundling of Contract Requirements*

87.     The VA may not bundle together two or more small contracts to form a solicitation that is likely to be unsuitable for award to a small business. 15 U.S.C. § 631(j) (requiring federal agencies "to the maximum extent practicable" to structure contract requirements to facilitate competition by and among small business concerns and avoid "unnecessary and unjustified bundling of contract requirements"). The VA's bundling in VISN 16 was unnecessary and unjustified.

22

88. In VISN 16 Procurement 1470, by bundling together "2000 different tests with total annual estimated test volume of over 190,000," the VA preemptively designed the solicitation to be unduly restrictive of competition and to hinder rather than facilitate competition by small business concerns.

89. Bundling in VISN 16 Procurement 1470 lacked a rational basis, and the VISN 16 J&A failed to provide any justification that the 2000 test menu bundling actually reflected the Agency's reasonable assessment of its minimum needs.

90. Upon information and belief, VISN 16 Procurement 1470 requirements were once separate contracts and in other VISNs core reference laboratory test requirements are unbundled into separate contracts enhancing opportunities for small business.

91. The VA knows how to unbundle and procure based on actual need as it did in VISN 10 Procurement 0196, where a nearby hospital was contracted for $49,350 to handle specialized time-sensitive tests for a base plus four option years.

92. Had some tests been bundled and procured separately, MCI and other SDVOSBs or VOSBs would have had a substantial chance of winning an unbundled solicitation.

*Unduly Restrictive Solicitation*

93. The VA failed to "specify its needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement." 41 U.S.C. § 3306(a)(1)(A). The VA failed to "foster the participation of small business concerns" and "structure its contracting requirements to facilitation competition by and among small business concerns, taking all reasonable steps to eliminate obstacles to their participation." 41 U.S.C. § 631(j)(1), (2).

94. The VA's restriction of competition including by excluding small businesses in VISN 16 Solicitation 1470 was unjustified and irrational because it was a result of the VA's failure to conduct proper advance planning, use of improper bundling, failure to follow the Rule of Two, bias against MCI, and preferential treatment of the incumbent.

95. The VA's restriction does not serve a legitimate purpose and the government may meet its minimum requirements equally, if not more, efficiently and cost-effectively by unbundling the tests, setting aside procurements for small businesses, or at a minimum conducting an open competition among qualified offerors including MCI.

*Violation of the Competition in Contracting Act and VA Rule of Two*

96. The Agency sole-sourced this contract on the basis of only one responsible source. This is directly contradicted by the Agency's own market research which found there were at least multiple large businesses, scores of small businesses, and three SDVOSBs that would offer to provide the solicited service.

97. Because there were at least three SDVOSBs willing and capable of performing the work, this contract should have been set aside for SDVOSBs according to the VA Rule of Two because the VA is *mandated* to set aside for SDVOSBs when "the contracting officer has a reasonable expectation that two or more [VOSBs or SDVOSBs] will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.". *See* 38 U.S.C. § 8127(d)(1); *Kingdomware*, 597 U.S. 162. The VA's failure to set aside the contract was thus a violation of the VA Rule of Two.

98. The VA's failure to set aside VISN 19 procurement and decision to sole-source the procurement was the result of impermissible advance planning, improper bundling of requirements, and unduly restrictive criteria and constitutes a violation of the Competition in

Contracting Act and VA Rule of Two. This Court must require the VA to resolicit VISN 19 procurement as an SDVOSB set aside.

## COUNT III

**The VISN 19 Sole Source Procurement Under Solicitation 0001 is Arbitrary, Capricious, and an Abuse of Discretion Because the Agency (1) Failed to Conduct Adequate Advance Planning, (2) Unnecessarily and Unjustifiably Bundled the Contract Requirements, (3) Unduly Restricted Competition, and (4) Violated the Competition in Contracting Act and VA Rule of Two**

99.     MCI realleges and reincorporates by reference the allegations of Paragraphs 1–64, as if stated fully herein.

*Failure to Conduct Adequate Planning*

100.     Agencies are required to conduct procurements using full and open competition unless an exception applies. 41 U.S.C. § 3301(a). "In no case may the head of an agency . . . enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advance planning." 41 U.S.C. § 3304(e)(5)(A)(i).

101.     The VA's decision to procure services via sole source procurement was contrary to law and regulation because many companies, including at least three SDVOSBs, were capable of delivering needed testing services and the agency's urgent need for the services is based entirely on its own failure to plan.

102.     The Agency's "immediate need" for reference laboratory services is the result of its own lack of advance planning. The Agency has "traditionally" used three big businesses to sole source its testing requirements in VISN 19, and its continued delay in conducting an acquisition is why it is in need of another illegal sole-source award. This lack of advance planning does not justify the decision to sole-source VISN 19 Procurement 0001.

███████████████

103. As the VA had multiple years to prepare for an open competition, this award of six-month contract is unjustified.

*Improper Bundling of Contract Requirements*

104. The VA may not bundle together two or more small contracts to form a solicitation that is likely to be unsuitable for award to a small business. 15 U.S.C. § 631(j) (requiring federal agencies "to the maximum extent practicable" to structure contract requirements to facilitate competition by and among small business concerns and avoid "unnecessary and unjustified bundling of contract requirements"). The VA's bundling in VISN 19 was unnecessary and unjustified.

105. In VISN 19 Procurement 0001, by tying its justification to one contractor's purported menu of "over 6,000 tests" described without justification as "the most comprehensive test menu," the VA preemptively designed the solicitation to be unduly restrictive of competition and to hinder rather than facilitate competition by small business concerns.

106. Bundling an excessive number of largely irrelevant, low volume or specialized tests in VISN 19 Procurement 0001 lacked a rational basis, and the VISN 19 J&A failed to provide any justification for the 6,000 test menu bundling.

107. Upon information and belief, VISN 19 Procurement 0001 requirements were previously procured under separate contracts and in other VISNs low volume or specialized tests are unbundled into separate contracts enhancing opportunities for small business.

108. The VA knows how to unbundle and procure based on actual need as it did in VISN 10 Procurement 0196, where a nearby hospital was contracted to handle specialized time-sensitive tests for $49,350 for a base plus four option years.

26

███████████████████████████████████

███████████

109. Had rare, low volume or specialized tests been unbundled and procured separately, MCI and other SDVOSBs or VOSBs would have had a substantial chance of winning an unbundled solicitation.

*Unduly Restrictive Solicitation*

110. The VA failed to "specify its needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement." 41 U.S.C. § 3306(a)(1)(A). The VA failed to "foster the participation of small business concerns" and "structure its contracting requirements to facilitation competition by and among small business concerns, taking all reasonable steps to eliminate obstacles to their participation." 41 U.S.C. § 631(j)(1), (2).

111. The VA's restriction of competition including by excluding small businesses in VISN 19 Procurement 0001 was unjustified and irrational because it was a result of the VA's failure to conduct proper advance planning, use of improper bundling, failure to follow the Rule of Two, bias against MCI, and preferential treatment of the incumbent.

112. The VA's restriction does not serve a legitimate purpose and the government may meet its minimum requirements equally, if not more, efficiently and cost-effectively by unbundling the tests, setting aside procurements for small businesses, or at a minimum conducting a competition among qualified offerors, including MCI.

*Violation of the Competition in Contracting Act and VA Rule of Two*

113. The Agency sole-sourced this contract on the basis of only one responsible source. This is directly contradicted by the Agency's own market research which found there were at least multiple large businesses, scores of small businesses, and three SDVOSBs that would compete to provide the solicited service.

████████████████████

██████████████

114.    Because there were at least three SDVOSBs willing and capable of performing the work, this contract should have been set aside for SDVOSBs according to the VA Rule of Two because the VA is mandated to set aside procurements for SDVOSBs when "the contracting officer has a reasonable expectation that two or more [VOSBs or SDVOSBs] will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States." *See* 38 U.S.C. § 8127(d)(1); *Kingdomware*, 597 U.S. 162. The VA's failure to set aside the contract was thus a violation of the VA Rule of Two.

115.    The VA's failure to set aside VISN 19 Procurement 0001 and decision to sole-source the procurement was the result of a lack of advance planning and constitutes a violation of the Competition in Contracting Act and VA Rule of Two. This Court must require the VA to resolicit VISN 19 procurement as an SDVOSB set aside.

### COUNT IV

**The VISN 20 Sole Source Procurement Under Solicitation 0022 is Arbitrary, Capricious, and Unreasonable Because the Agency (1) Failed to Conduct Adequate Advance Planning, (2) Unnecessarily and Unjustifiably Bundled the Contract Requirements, (3) Unduly Restricted Competition, and (4) Violated the Competition in Contracting Act and VA Rule of Two**

116.    MCI realleges and reincorporates by reference the allegations of Paragraphs 1–64, as if stated fully herein.

*Failure to Conduct Adequate Planning*

117.    Agencies are required to conduct procurements using full and open competition unless an exception applies. 41 U.S.C. § 3301(a). "In no case may the head of an agency . . . enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advance planning." 41 U.S.C. § 3304(e)(5)(A)(i).

██████████████████████████

118.    The VA's decision to procure services via sole source procurement was contrary to law and regulation because many companies, including at least three SDVOSBs, were capable of delivering needed testing services and the agency's urgent need for the services is based entirely on its own failure to plan.

119.    The Agency's "urgent" need for reference laboratory services is the result of its own lack of advance planning. The Agency has been sole-sourcing to OHSU citing a minority of time-sensitive tests for a long time, and its continued delay in conducting an acquisition is the only reason why it is in need of another illegal sole-source award. This lack of advance planning does not justify the decision to sole-source VISN 20 Procurement 0022.

120.    As the VA had multiple years to prepare for an open competition, this award of five-month contract is unjustified.

*Improper Bundling of Contract Requirements*

121.    The VA may not bundle together two or more small contracts to form a solicitation that is likely to be unsuitable for award to a small business. 15 U.S.C. § 631(j) (requiring federal agencies "to the maximum extent practicable" to structure contract requirements to facilitate competition by and among small business concerns and avoid "unnecessary and unjustified bundling of contract requirements"). The VA's bundling in VISN 19 was unnecessary and unjustified.

122.    In VISN 20 Procurement 0022, by bundling together the minority of tests that require one-hour turnaround time with those that do not, the VA preemptively designed the solicitation to be unduly restrictive of competition and to hinder rather than facilitate competition by small business concerns.

123. Bundling in VISN 20 Procurement 0022 lacked a rational basis, and the VISN 20 J&A failed to provide any justification for failing to unbundle "unique" tests that, according to the VA, only OHSU can perform due to its physical connection to the facility.

124. Upon information and belief, VISN 20 Procurement 0022 requirements were once separate contracts and in other VISNs rare, time-sensitive tests are unbundled into separate contracts enhancing procurement opportunities for small business.

125. The VA knows how to unbundle and procure based on actual need as it did in VISN 10 Procurement 0196, where a nearby hospital was contracted to handle specialized time-sensitive tests for $49,350 for a base plus four option years.

126. Had the rare, time-sensitive or otherwise specialized tests been unbundled and procured separately, MCI and other SDVOSBs or VOSBs would have had a substantial chance of winning an unbundled solicitation.

*Unduly Restrictive Solicitation*

127. The VA failed to "specify its needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement." 41 U.S.C. § 3306(a)(1)(A). The VA failed to "foster the participation of small business concerns" and "structure its contracting requirements to facilitation competition by and among small business concerns, taking all reasonable steps to eliminate obstacles to their participation." 41 U.S.C. § 631(j)(1), (2).

128. The VA's restriction of competition including by excluding small businesses in VISN 20 Procurement 0022 was unjustified and irrational because it was a result of the VA's failure to conduct proper advance planning, use of improper bundling, failure to follow the Rule of Two, bias against MCI, and preferential treatment of the incumbent.

129.    The VA's restriction does not serve a legitimate purpose and the government may meet its minimum requirements equally, if not more, efficiently and cost-effectively by unbundling the tests, setting aside procurements for small businesses, or at a minimum conducting a competition among qualified offerors including MCI.

*Violation of the Competition in Contracting Act and VA Rule of Two*

130.    The Agency sole-sourced this contract on the basis of only one responsible source. This is directly contradicted by the Agency's own market research which found there were multiple large businesses, scores of small businesses, and three SDVOSBs willing to compete to provide the solicited service.

131.    Because there were at least three SDVOSBs willing and capable of performing the work, this contract should have been set aside for SDVOSBs according to the VA Rule of Two because the VA is mandated to set aside procurements for SDVOSBs when "the contracting officer has a reasonable expectation that two or more [VOSBs or SDVOSBs] will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States." *See* 38 U.S.C. § 8127(d)(1); *Kingdomware*, 597 U.S. 162. The VA's failure to set aside the contract was thus a violation of the VA Rule of Two.

132.    The VA's failure to set aside VISN 20 Procurement 0022 requirements and decision to sole-source the procurement was the result of impermissible advance planning and constitutes a violation of the Competition in Contracting Act and VA Rule of Two. This Court must require the VA to resolicit VISN 20 procurement as an SDVOSB set aside.

133.    The VA's decision to award the VISN 20 Procurement 0022 was contrary to law and regulation because the agency failed to conduct adequate advance planning, the VA's J&A is irrational, and the contract violates the VA Rule of Two.

31

## COUNT V

### The VA Is Serially Awarding Sole Source Contracts in Violation of the Competition in Contracting Act and the VA Rule of Two

134.    MCI realleges and reincorporates by reference the allegations of Paragraphs 1–64, as if stated fully herein.

135.    The VA's actions evince its widespread and deeply rooted illegal practice of awarding sole source contracts in violation of the Competition in Contracting Act and the VA Rule of Two.

136.    There is a robust commercial market for laboratory testing services in all VISNs, including not just SDVOSBs (for whom the law mandates a set aside) but also large companies that are capable of providing testing services. There is nothing unique from VISN to VISN about the entities' core need for reference laboratory testing services. They are the same tests which are performed in VA and civilian medical centers around the country every day. Yet, the VA has repeatedly issued sole source awards across the country, violating CICA's requirement to conduct a full and open competition unless an exception, like the VA Rule of Two applies.

137.    Just in recent weeks, the VA has announced sole source awards in VISNs 1, 16, 19, and 20, at issue in this case.

138.    Unless this Court scrutinizes the VA's conduct and issues an appropriate injunction the VA will continue its illegal practices. There have been scores more sole-source notices in the past, and there will continue to be more in the future absent an injunction.

## COUNT VI

### The VA Lacks Statutory Authority to Conduct Tiered Evaluations in Procuring Laboratory Testing Services

139.    MCI realleges and reincorporates by reference the allegations of Paragraphs 1– 64, as if stated fully herein.

140.    CICA requires agencies to use full and open competition "[e]xcept as provided in Sections 3303, 3304(a), and 3305" of the same title "and except in the case of procurement procedures otherwise expressly authorized by statute." 41 U.S.C. § 3303.

141.    Tiered evaluations, by definition, are not a full and open procurement procedure and therefore must be "expressly authorized by statute." *Id.*

142.    The VA lacks statutory authority to use a tiered evaluation process in its procurement because Congress has not enacted any statute that explicitly or implicitly authorizes the VA to use tiered evaluations.

143.    But the VA has use tiered evaluations in the past, is using tiered evaluations in VISN 4, and will continue to use tiered evaluations in violation of law to avoid its statutory obligation to conduct market research and set aside almost every procurement for laboratory testing services under VA's Rule of Two.

144.    The VA must set aside every procurement for competition among SDVOSBs and VOSBs when the VA Rule of Two determination indicates a set-aside is required, pursuant to 38 U.S.C. § 8127(c) and the use of tiered evaluations is a violation of that statute.

## COUNT VII

**Even if the VA has statutory authority, the VA Lacks Regulatory Authority to Conduct Tiered Evaluations in Procuring Laboratory Testing Services**

145. MCI realleges and reincorporates by reference the allegations of Paragraphs 1–64, as if stated fully herein.

146. Even if the VA had statutory authority to conduct tiered evaluations, the relevant VA regulations do not permit the VA to conduct a tiered evaluation that includes submissions of proposals by or award to large businesses.

147. VAAR 819.7010 purports to permit the VA to use tiered evaluations "when the VA Rule of Two (*see* 802.101) determination indicates a set-aside is required, but other circumstances preclude a confident conclusion that an award can be made at the SDVOSB or VOSB tier." VAAR 819.7010(b).

148. But that regulation only permits the VA to use tiered evaluations from targeted tiers of small business groups. *See* VAAR 819.7010(b)(1).

149. VAAR 819.7010(c) explicitly limits tiered evaluations to (1) SDVOSBs or VOSBs, (2) HUBZone small businesses, and (3) other small business concerns.

150. Nothing in VAAR suggests that the VA may conduct a tiered evaluation that includes a tier of large businesses.

151. Contrary to its own regulation, the VA included a large business tier in VISN 4 Solicitation.

152. The VA's tiered evaluation that includes large businesses is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. This Court should

enjoin the VA from conducting tiered evaluations in all procurements including VISN 4 Procurement.

## COUNT VIII

**Even if the VA Has Statutory and Regulatory Authority to Conduct Tiered Evaluations, the VA Lacked Reasoned Bases to Conduct Tiered Evaluations in Procuring Laboratory Testing Services**

153.    MCI realleges and reincorporates by reference the allegations of Paragraphs 1– 64, as if stated fully herein.

154.    Even if this Court were to conclude the VA has statutory and regulatory authority to conduct tiered evaluations, the VA lacked reasoned bases to conclude that there are not enough qualified SDVOSBs such that it may use a tiered evaluation process for the procurement of laboratory testing services.

155.    Had the VA conducted proper market research or had the VA conducted proper assessment of such market research, it would have concluded that there are more than two qualified SDVOSBs that can provide reference laboratory services and that it could expect to receive offers at a fair and reasonable price that represents best value to the Government. Therefore, the VA was mandated to set-aside the competition for SDVOSBs and was precluded from using tiered evaluations in VISN 4 Solicitation. *See* 38 U.S.C. § 8127(d)(1); VAAR 819.7010(b).

156.    There are over 283 SDVOSBs and VOSBs under NAICS 621511. Three among them (Central Tox, NEO Services, and MCI) are fully licensed SDVOSBs that have competed for and won VA reference laboratory testing procurements before.

157.    As there are at least two veteran-owned and controlled small businesses that provide qualifying reference laboratory testing services, the VA is required to set aside

essentially all requirements for reference laboratory testing services for veteran-owned small businesses.

158. The VA has violated this obligation and the Rule of Two by failing to set aside these solicitations for VISN 4 Procurement.

159. This Court should order the VA to set aside VISN 4 Procurement for SDVOSBs.

**COUNT IX**

**The VA Has Refused to Obey the Rule of Two Based Upon Its Bias Against MCI and Other SDVOSBs**

160. MCI realleges and reincorporates by reference the allegations of Paragraphs 1– 64, as if stated fully herein.

161. Through the unauthorized and unjustified disregard of three capable SDVOSBs that responded to sources sought notices, the continued issuance of unrestricted procurements and sole source awards to other than SDVOSBs, and the use of tiered evaluations the VA compromised the integrity of the procurement process for reference laboratory testing services across the nation by blatantly violating the VA Rule of Two.

162. The Government, including the VA, is required to conduct itself "in a manner above reproach and . . . with complete impartiality and with preferential treatment for none." FAR 3.101-1. Federal procurement law requires that "[t]ransactions relating to the expenditure of public funds require the highest degree of public trust and an impeccable standard of conduct." *Id*.

36

163.     Only bias can explain the Agency's continuous attempts to deprive MCI and other capable SDVOSB laboratory testing service providers of the ability to compete fairly and in accord with mandatory statutory requirements.

164.     More generally, at least a dozen VA contracting officers and procurement officials had or should have had knowledge of the qualifications of MCI and other SDVOSBs to perform laboratory testing services for VA at the time the Agency selected each of these improper procurement procedures and the scores of improper procurement procedures used by VA to illegally divert is laboratory testing service requirements over the past six years. MCI has regularly communicated with these VA officials to express interest in solicitations for laboratory testing services and to respond to requests for information and sources sought notices. The VA's failure to set aside every procurement for reference laboratory services that meets the requirements of 38 U.S.C. § 8127(d) can only be explained by bias against MCI and/or SDVOSBs generally.

165.     The fact that the VA had to take at least 53 corrective actions  since 2018 based solely on protests by MCI shows that the VA is systematically and institutionally unwilling to follow the Rule of Two due to its inexplicably, unjustified, and illegal bias against MCI and/or SDVOSBs generally. These and other procurement cancellations amount to well over $200 million.

166.     After MCI raised its concerns with VA officials following these improper procurements, the VA took actions specifically targeted at discouraging MCI from participating in laboratory testing procurements. These include:

    a.  The VA has awarded multiple contracts to MCI since 2018 on condition that MCI obtain a Certificate of Competency ("COC").

However, upon successfully completing the SBA-run COC process, the VA has inexplicably cancelled the contracts. These arbitrary and capricious actions, which were never explained or justified, can only be explained by the VA's bias against MCI and/or SDVOSBs generally.

b. VA officials have expressly discouraged MCI from bidding on VA laboratory testing procurements and encouraged its owner to sell the company.

c. VA has issued multiple solicitations as set asides for SDVOSBs but then has failed to award contracts under those solicitations.

167. Because VA's determination to deprive MCI of the opportunity to compete for hundreds of millions of dollars in laboratory testing services contracts is the product, in whole or in part, of bias, bad faith, improper influence, and/or conflicts of interest, VA's award decisions in VISNs 1, 4, 16, 19, 20, and all other VISNs' procurements for laboratory testing services are arbitrary, capricious, and not in accordance with law. VA has consistently failed to give fair consideration to MCI and treat it impartially, in VISNs 1, 4, 16, 19, 20, and across VA procurements for laboratory testing services.

168. MCI is prejudiced by VA's conduct because, absent this concerted effort to exclude MCI's participation from these procurements because of the bias, bad faith, and improper actions of VA's procurement personnel, VA would have set aside these procurements for SDVOSBs and provided MCI with a fair opportunity to compete.

## VI. PRAYER FOR RELIEF

169. WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in its favor and against Defendant as follows:

i. Declare that the VA must conduct all laboratory testing services procurements in compliance with statutory and regulatory requirements, including the Competition in Contracting Act and VA Rule of Two;

ii. Enjoin the VA from awarding, commencing performance, or modifying an existing contract of any type to procure laboratory testing services without conducting an analysis under the VA Rule of Two;

iii. Order the VA to conduct reasonable market research and resolicit the VISN 1 Solicitation No. 36C24124Q0733;

iv. Order the VA to conduct reasonable market research and resolicit VISN 16 Solicitation No. 36C25624Q1470;

v. Order the VA to conduct reasonable market research and resolicit VISN 19 Solicitation No. 36C25925F0001;

vi. Order the VA to conduct reasonable market research and resolicit VISN 20 Solicitation No. 36C26025P0022;

vii. Enjoin the VA from awarding contracts or commencing performance of VISN 4 Solicitation No. 36C24424R0004;

viii. Declare that the VA is not statutorily authorized to use tiered evaluation schemes;

ix. Declare that even if the VA were statutorily authorized to use tiered evaluations, the VA's use of tiered evaluations that include a large business tier violates VAAR;

x. Declare that the VA's use of tiered evaluations is improper where, as here, recent market research confirms that VA Rule of Two is met by available SDVOSBs;

xi. Allow discovery into the VA's biased procurement of laboratory testing services; and

xii. Grant such other and further relief as the Court deems appropriate.

Dated: December 3, 2024

Respectfully submitted,

/s/ Jeffery M. Chiow
Jeffery M. Chiow (attorney of record)
Greenberg Traurig, LLP
2101 L Street NW, Suite 1000
Washington, D.C. 20037
(202) 331-3149
jeff.chiow@gtlaw.com

*Counsel for MCI Diagnostic Center, LLC*

Of Counsel:

Eleanor M. Ross
Greenberg Traurig, LLP
2101 L Street NW, Suite 1000
Washington, D.C. 20037
(202) 530-8565
Eleanor.Ross@gtlaw.com

Shirin Afsous
Greenberg Traurig, LLP
2101 L Street NW, Suite 1000
Washington, D.C. 20037
(703) 749-1354
Shirin.Afsous@gtlaw.com

████████

Yongho Lee
Greenberg Traurig, LLP
2101 L Street NW, Suite 1000
Washington, D.C. 20037
(202) 533-2318
Andew.Lee@gtlaw.com

████████████████████